

**SIGNED this 19 day of September, 2005.**

```
                                    _____
                                              R. Thomas Stinnett
                                       UNITED STATES BANKRUPTCY JUDGE
```
_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:

BENCHMARK HEALTHCARE OF TOLEDO, INC. d/b/a         Bankruptcy Case
West Toledo Healthcare and Rehabilitation Center       No. 04-13086

    Debtor in Possession                              Chapter 11


BENCHMARK HEALTHCARE OF TOLEDO, INC.,

    Plaintiff                                         Adversary Proceeding
                                                      No. 05-1102
v.

FURMAN MCWILLIAMS AND KOLLIN L. RICE,

    Defendants


**MEMORANDUM**

Appearances:    W. Neal McBrayer & Candice L. Reed, Miller & Martin PLLC, Nashville, Tennessee, Counsel for Plaintiff

                    Kollin L. Rice, Rice & Company, LPA, Toledo, Ohio, *Pro Se* & Counsel Defendant Furman McWilliams

R. Thomas Stinnett, United States Bankruptcy Judge

The defendant, Mr. McWilliams, obtained a judgment in federal district court in Ohio against Benchmark Healthcare of Toledo, Inc. (Benchmark Toledo). The other defendant, Mr. Rice, is the lawyer who represented Mr. McWilliams in the federal court lawsuit and in attempting to collect the judgment. About six months after entry of the judgment, Benchmark Toledo filed a chapter 11 bankruptcy case in this court. The automatic stay under § 362 of the bankruptcy code took effect immediately. The automatic stay generally enjoins every creditor from taking any action to collect its claim against the debtor, including acts to secure the claim by obtaining or perfecting a lien on the debtor's property. 11 U.S.C. § 362(a).

After the bankruptcy petition was filed, the defendants caused to be recorded a certificate of judgment in Lucas County, Ohio for the purpose of creating or perfecting a judgment lien on Benchmark Toledo's real property in the county. Benchmark Toledo brought this action against the defendants for violating the automatic stay (1) by filing the certificate of judgment and (2) by refusing to release the judgment lien promptly when Benchmark Toledo requested it. The complaint asks the court to grant two forms of relief: (1) avoid the lien and cause it to be stricken from the records; (2) hold the defendants liable for damages for willfully violating the automatic stay by refusing the release the lien promptly after Benchmark Toledo requested it. The defendants have filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Fed. R. Bankr. P. 7012; Fed. R. Civ. P. 12(b)(6).

For purposes of ruling on a motion under Rule 12(b)(6), the court accepts as true the facts alleged in the complaint and the reasonable inferences from those facts. The court views the allegations of the complaint in the light most favorable to Benchmark Toledo. The court can grant the motion only if the court is certain that Benchmark Toledo cannot prove any set of facts that is consistent with the complaint's allegations and will entitle Benchmark Toledo to relief. *United Food and Commercial Workers International Union Local 199 v. United Food and Commercial Workers International Union*, 301 F.3d 468 (6th Cir. 2002).

To the extent a motion under Rule 12(b)(6) relies on evidence outside the pleadings, the court can treat it as a motion for summary judgment. Fed. R. Bankr. P. 7012; Fed. R. Civ. P. 12(b). The

2

court can grant summary judgment to the moving party only if there is no genuine issue of material fact, and based on the undisputed facts, the law entitles the moving party to judgment in its favor. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c).

The defendants argue that Benchmark Toledo's first request for relief is moot because the defendants released the lien about a month after this lawsuit was filed. Benchmark Toledo argues that (1) the lien release filed by the defendants releases the lien as to Benchmark Toledo but specifically provides that the lien will remain in effect as to Villa North Nursing Rehabilitation Center and Benchmark Healthcare, Inc.; (2) the bankruptcy case file reveals that Villa North Nursing and Rehabilitation Center is a name under which Benchmark Toledo operated the nursing home that is Benchmark Toledo's primary asset; (3) the records of the Ohio Secretary of State reveal no such entity as Benchmark Healthcare, Inc., doing business in the state of Ohio, and as a result, continuation of the lien in that name is simply an attempt to confuse interested parties into thinking the defendants have a lien on the Benchmark Toledo's property. In summary, Benchmark Toledo contends that the filed certificate of judgment still purports to create or perfect a judgment lien on Benchmark Toledo's property.

The defendants have not disputed Benchmark Toledo's argument that the release attempts to continue the judgment lien as to Villa North and Benchmark Healthcare, Inc. The complaint and exhibits reveal a connection between Benchmark Toledo and Villa North. The defendants obviously thought that property belonging to Benchmark Toledo could be taken to collect the judgment against Villa North. Complaint Exhibit A. The complaint and exhibits imply, at the least, an ownership connection of some kind between Benchmark Toledo and Villa North. For the purpose of deciding the motion under Rule 12(b)(6), the court assumes the truth of what is implied by the complaint (including the exhibits). The release fails to establish the facts to prove that Benchmark Toledo does not need any more relief on its request for removal of the lien. Benchmark Toledo may or may not need more relief – depending on the ownership of the property in question. As a result, the release does not entitle the

defendants to dismissal under Rule 12(b)(6) or partial summary judgment under Rule 56.[1]

Benchmark Toledo's second request for relief asks for damages from the defendants for willfully violating the automatic stay by refusing to release the lien promptly after Benchmark Toledo's lawyers notified them that Benchmark Toledo filed bankruptcy before they filed the certificate of judgment. 11 U.S.C. § 362(a)(3). The defendants' argument is not entirely clear, but it seems to go like this: (1) Mr. Rice had justifiable doubts as to whether filing the certificate of judgment violated the automatic stay; (2) even if filing the certificate violated the automatic stay, Mr. Rice had justifiable doubts as to whether he and his client had a duty to undo the filing without an order from the court; (3) Mr. Rice requested citations of legal authority from Benchmark Toledo's lawyers on these and other points; (4) the cases cited by Benchmark Toledo's lawyers did not adequately support Benchmark Toledo's contentions, and therefore, the defendants did not immediately release the lien; (5) Benchmark Toledo was not harmed by the delay because the filed certificate of judgment was void as the result of having been filed in violation of the automatic stay.

The court begins with the fifth and final point. Generally, an act done in violation of the automatic stay is void. *Smith v. First America Bank*, 876 F.2d 524, 19 Bankr.Ct.Dec. 1097 (6th Cir. 1989); *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 28 Collier Bankr.Cas.2d 1002 (6th Cir. 1993). If Benchmark Toledo wants to transfer an interest in the property, neither Benchmark Toledo nor a potential transferee can assume the filed certificate of judgment is void and ignore it on that ground. Unless the defendants cure the violation of the stay, voidness is only a remedy that Benchmark Toledo can obtain in a court proceeding. Benchmark Toledo asked the defendants to release the judgment lien in the hope that a lawsuit would not be needed. The defendants delayed to the point that Benchmark Toledo finally filed this adversary proceeding. Even if Benchmark Toledo has not been trying to transfer any interest in the property, Benchmark Toledo still needs to remove the lien for future business and bankruptcy purposes, and Benchmark Toledo has been damaged by the defendants' delay at least to the extent of being forced to file this procceding and incur the resulting expenses. Of course, this

---

[1] In this situation, there is no need for the court to give the parties additional time to treat the motion as a summary judgment motion as to the effect of the release. Fed. R. Bankr. P. 7012; Fed. R. Civ. P. 12(b).

conclusion assumes that filing the certificate of judgment violated the automatic stay.

This brings the court to the other points argued by the defendants. The defendants seem to be arguing that the facts alleged in the complaint can not prove the defendants *willfully* violated the stay by delaying their release of the lien after Benchmark Toledo requested it. The court disagrees.

The automatic stay includes four broad rules that are almost certain to prohibit a creditor from securing its claim after bankruptcy by creating or perfecting a judgment lien on property of the bankruptcy estate or the debtor. First, a creditor can not secure its claim against the debtor by creating or perfecting a lien on the debtor's property that became property of the bankruptcy estate at the moment the debtor filed bankruptcy. 11 U.S.C. §§ 362(a)(4) & 541(a). This rule makes no distinction according to whether the creditor's claim against the debtor arose before or after the debtor filed bankruptcy. Second, the automatic stay prohibits a creditor from securing its pre-bankruptcy claim against the debtor by creating or perfecting a lien on property of the bankruptcy estate *or* property of the debtor that is not part of the bankruptcy estate. 11 U.S.C. § 362(a)(5). Third, the automatic stay prohibits the enforcement against the debtor or against property of the bankruptcy estate of a judgment obtained before the filing of the debtor's bankruptcy case. 11 U.S.C. § 362(a)(2) & § 301. Fourth, the automatic stay prohibits any act to collect, assess, or recover a claim against the debtor that arose before commencement of the debtor's bankruptcy case. 11 U.S.C. § 362(a)(6).

The defendants have not argued that they thought Benchmark Toledo's real property in Toledo was not property of the bankruptcy estate. The court is not aware of any good reasons why they might have thought it was not property of the bankruptcy estate.

Section 362 includes an exception from the four rules set out above. The exception allows a creditor to perfect a lien after the filing of the bankruptcy case if the perfection will relate back to a pre-bankruptcy date. 11 U.S.C. §§ 362(b)(3) & 546(b). The defendants have not relied on this exception. The first case that Benchmark Toledo's lawyers cited to Mr. Rice supports the conclusion that the exception would not apply under Ohio law. *Frosdick v. Bruns, Gant & Toms Agency, Inc. (In re Frosdick)*, 16 B.R. 60 (Bankr. N. D. Ohio 1981).

The defendants have not argued that they were thinking of requesting the court to take

5

Main Document      Page 6 of 8

the unusual step of retroactively annulling the automatic stay. The grounds for retroactive annulment rarely exist. The record in this proceeding does not reveal any possible grounds. *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 28 Collier Bankr.Cas.2d 1002 (6th Cir. 1993). Furthermore, if a creditor intends to make this argument, it should promptly raise it with the court. *Transouth Financial Corp. v. Sharon (In re Sharon)*, 234 B.R. 676 (6th Cir. B.A.P. 1999).

Defendant Mr. Rice asserts that he asked Benchmark Toledo's lawyers for legal authority for a rule requiring defendants to release the lien voluntarily, and Benchmark Toledo's lawyers cited *Frosdick v. Bruns, Gant & Toms Agency, Inc. (In re Frosdick)*, 16 B.R. 60 (Bankr. N. D. Ohio 1981). According to Mr. Rice, he asked for more legal authority because he distinguished *Frosdick* on the ground that it involved a judgment entered after the debtor filed bankruptcy.

*Frosdick* did not involve a judgment entered after the bankruptcy filing. The judgment was entered before bankruptcy and recorded afterward for the purpose of creating or perfecting a judgment lien on the debtor's property. The timing of the creditor's actions in *Frosdick* was essentially the same as the timing of the defendants' actions. Furthermore, the fact that the defendants' judgment was entered before Benchmark Toledo's bankruptcy made more, not fewer, provisions of the automatic stay apply. 11 U.S.C. § 362(a)(2), (4), (5), (6).

*Frosdick* does not involve the question of whether a creditor has a duty – without a court order – to release a judgment lien that was created or perfected in violation of the automatic stay. *Frosdick* was cited to show that filing the certificate of judgment violated the automatic stay. Mr. Rice wrote back to Benchmark Toledo's lawyers saying that *Frosdick* did not answer the question of whether filing the certificate of judgment violated the automatic stay even though his client was not listed in the bankruptcy and had no notice of the bankruptcy before filing the certificate of judgment.

Section 362 does not make any exceptions from the automatic stay for actions taken by a creditor without notice or knowledge of the bankruptcy case. The rule that a creditor can violate the automatic without having any notice or knowledge of the bankruptcy case is well established, well known, and should be obvious from § 362 itself. 9B Am.Jur.2d *Bankruptcy* § 1756; 8A C.J.S. *Bankruptcy* § 102.

Whether the creditor had notice or knowledge of the bankruptcy case before violating the automatic stay is relevant to whether the creditor is liable for damages on the ground that it *willfully* violated the stay. 9B Am.Jur.2d *Bankruptcy* § 1761; 8A C.J.S. *Bankruptcy* § 101.

The *Sharon* case leaves little doubt that a creditor generally has a duty to cure a violation of the stay without being ordered to do so by the bankruptcy court. *Transouth Financial Corp. v. Sharon (In re Sharon)*, 234 B.R. 676 (6th Cir. B.A.P. 1999). Likewise, the *Timbs* case makes it clear that the bankruptcy court can hold the creditor's lawyer personally liable for willfully failing to cure an earlier violation of the automatic stay. *In re Timbs*, 178 B.R. 989 (Bankr. E. D. Tenn. 1994). Of course, a court is not likely to find that the failure of the creditor or its lawyer to cure an earlier stay violation was itself a willful violation of the stay if they had good, honestly held reasons for believing the earlier action did not violate the stay or the court would annul the stay retroactively. Good, honestly held reasons do not include flimsy or pretextual reasons. The court will consider whether the creditor and its lawyer could have easily discovered that the law was against them. The court will also consider whether they have continued to show a grudging opposition to giving up the advantage gained by violating the automatic stay, especially if they do not have any real grounds for opposition other than the desire to keep the advantage. This brings the court back to the continued communications between Benchmark Toledo's lawyers and Mr. Rice.

Benchmark Toledo's lawyers replied to Mr. Rice's request with citations to cases that were supposed to show that (1) the defendants' lack of notice or knowledge of the bankruptcy made no difference to whether filing the certificate of judgment violated the automatic stay; (2) after learning of the stay violation, the creditor has an affirmative duty to undo a violation of the automatic stay; (3) failure to undo the violation promptly after finding out about it may be a willful violation of the automatic stay. Benchmark Toledo filed its complaint about six weeks after the date of this letter because the defendants had not released the lien.

The cited cases support all the points for which they were cited. Mr. Rice contends he validly distinguished two of the cases on the ground that they involved creditors who repossessed collateral and enforced liens after the bankruptcy filings, but his client did not do either of those things.

7

*Will v. Ford Motor Credit Co. (In re Will)*, 303 B.R. 357 (Bankr. N. D. Ill. 2003); *Mullis v. USA Restaurant Equipment Co. (In re Harsh)*, 277 B.R. 833 (Bankr. M. D. Ga. 2001). This distinction is questionable. The key point in the cited cases was the effect of violating the automatic stay as to property of the bankruptcy estate or the debtor. The particular method of violating the automatic stay was not crucial. Finally, the third case could not be distinguished on this ground. Indeed, the facts of the third case closely parallel the facts alleged in Benchmark Toledo's complaint. *Keen Premium Asset Recovery Group (In re Keen)*, 301 B.R. 749 (Bankr. S. D. Fla. 2003).

In summary, the defendants' motion must be denied as to Benchmark Toledo's claim for damages. The defendants have not shown that Benchmark Toledo will be unable to prove any set of facts that is consistent with the complaint and will justify the recovery of damages from the defendants for willful violation of the automatic stay.

The court will enter an order denying the motion.

# # #